## In the Matter of Thomas Fowler.

*Criminal recognizances—habeas corpus—punishment for disoderly conduct— evidence in penal matters cannot be received in absence of accused person.*

Criminal recognizances must be executed by the accused personally.

Justices of the peace have no power to issue the writ of *Habeas Corpus* to enable persons convicted of disorderly conduct to come before them for the purpose of giving bail.

A person convicted of disorderly conduct cannot be bound out as an apprentice or committed to imprisonment at hard labor for any period without being personally present.

Act 159 of 1881, in providing that justices of the peace may commit disorderly persons to the Ionia reformatory from other counties is invalid.

Evidence against a person accused or convicted of a penal offense cannot be received in his absence for the purpose of imposing or increasing his sentence.

HABEAS CORPUS. Submitted Oct. 10. Decided Oct. 11.

*George H. Cagwin* for petitioner.

Attorney General *Jacob J. VanRiper* against.

MARSTON, J. Fowler was by a justice of the peace of Hillsdale county convicted of being a disorderly person, and was thereupon required to enter into a recognizance with two sureties, himself in the sum of three hundred dollars and such sureties in the sum of three hundred dollars each, for his good behavior for the term of one year. The justice farther determined that Fowler had made default in finding such sureties, and it was therefore adjudged and determined that Fowler should be confined in the State house of correction and reformatory at Ionia, there to be kept until such sureties be found or he be discharged by due course of law. The conviction and commitment bore date June 20, 1882.

Several questions going to the validity of the commitment have been raised, and the State officers desire that those relating to the authority to commit to the above institution for such offenses be passed upon, even although it might be found that the complaint upon which the accused was charged was insufficient.

In the *Matter of Ryan*, 45 Mich., 173, this Court held that under the then existing legislation persons convicted of being disorderly could not be sentenced from another county to the State reformatory.

The Legislature in 1881 attempted to cure the objections in that case presented, by providing that in default of sure-

ties being found by any person convicted of such offense, the justice should file in the county clerk's office a record of the conviction, and by warrant under his hand commit such offender to the common jail of the county, or to the Detroit House of Correction, or to the State house of correction at Ionia, there to remain until such sureties be found or such offender be discharged according to law. Section 3.

By section six any person committed to either of such places, for not finding sureties for good behavior, may be discharged by any two justices of the peace, in the county in which he was convicted, upon giving such sureties as were originally required of such offender.

Section seven, as amended, makes it the duty of the keeper of any jail, and the wardens of the reformatory and house of correction, to lay before the circuit court for the county in which any such person shall have been convicted, on the first day of any term, a list of the persons in their custody that have been convicted as disorderly, the name of the justice committing them, and the time of their imprisonment.

Section eight requires the circuit court before whom such list is laid, to inquire into the circumstances of each case, and hear any proofs that may be offered, and to examine the record of conviction, which shall be deemed presumptive evidence of the facts therein contained.

By section nine the circuit court may discharge such disorderly person from confinement, either absolutely or upon receiving sureties, or it may authorize those of a certain age to be bound out, with certain other specified powers ; and by *section ten*, such court may in its discretion order any such disorderly person to be kept in the common jail or State house of correction, or Detroit House of Correction, for any time not exceeding six months, at hard labor. Pub. Acts 1881, p. 156 ; 1 Comp. L. pp. 645–6. This abstract of the provisions of the statute relating to disorderly persons, as amended, shows that the difficulties referred to in the *Ryan* case have not been removed.

The conviction requires the relator to enter into a recog-

nizance with two sureties, himself in the sum of three hundred dollars, and each surety in the same amount.   In order to comply with this part of the conviction the person convicted must be personally present when the recognizance is executed and given; indeed the very nature of a criminal recognizance requires the accused to personally execute and be bound thereby, and it is clear that he may at any time put an end to the imprisonment by entering into a recognizance with sureties.

The statute provides before whom and where he may do this after commitment: 1st. Before any two justices of the peace, in the county in which he was convicted.   2d. Before the circuit court for the county, in which any such person shall have been convicted.

The statute makes no provision requiring the warden at Ionia or the superintendant at Detroit to take the person in custody, when requested by him, or at any stated period, before any two justices or before the circuit court, so that the right which the statute attempts to give him, to obtain his liberty by entering into a recognizance, he may find it exceedingly difficult to obtain the benefit of.   If the warden or superintendent endeavors to afford the person convicted an opportunity to enter into a recognizance, when requested, they may find themselves traveling all over the state with persons convicted in search of sureties.   If they refuse to give any opportunity, then what remedy or power has the person convicted to compel his keeper to give him the requisite opportunity?   The recognizance may be entered into before any two justices of the county in which the person was convicted, but they have no power to issue a writ of habeas corpus to bring him before them for such purpose.   The circuit court may also admit to bail, and may issue such a writ, but in many counties in this State but two sessions of that court are held each year, so that the opportunity to apply for such a writ could only be made semi-annually.   There is still another objection.   Where the person is brought from a long distance and confined in the State house of correction at Ionia or Detroit, he has no opportunity to

see his friends or those who would be likely to assist him, and the result must be in most cases to in effect deprive persons so confined of the benefits of the statute.

Again, the statute requires the circuit court to authorize the person convicted in certain cases to be bound out in some calling as a servant or apprentice. The court may also inquire into the circumstances of each case and hear any proofs that may be offered; and may in its discretion order any such disorderly person to be kept in the common jail, State House of correction, or Detroit House of Correction, for any time not exceeding six months at hard labor.

Now surely it requires no argument at the present day, nor citation of authorities, to show that none of these things can be done by the circuit court unless the person convicted is personally present. It would be so clearly contrary to our fundamental law to permit evidence to be introduced and considered against a person convicted or accused; or to permit the sentence imposed to be increased, as this statute provides, in the absence of the person convicted, that we cannot think the Legislature contemplated such a thing. If attempted it would be clearly unconstitutional and of no force or effect.

These statutory provisions, in providing that recognizances may be entered into, and the matter inquired into, in the county in which the person was convicted, but recognizes and harmonizes with the constitutional requirements that persons accused shall be tried in the vicinage where the offence was committed. And any attempt to make such investigation at places distant therefrom would be in violation thereof. The law also contemplates that in this class of offenses the person convicted may regain his liberty by giving the requisite security; but to confine him at a place remote from his home deprives him of the power of so doing, as he cannot expect to find sureties among strangers or where he is unknown, and this works a denial of justice. If the object of the legislation was to confine the person convicted for an indefinite period, and prevent him from giving the proper

recognizance, then the present legislation is admirably framed to enforce such a policy.

Other interesting and important questions might be discussed, but enough has been said, we think, to show that the petitioner is entitled to be discharged.

The other Justices concurred.